UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
MICHAEL B. DONOHUE, *et al.*,

        Plaintiffs,

        -against-

CBS CORPORATION, *et al.*

        Defendants.
-------------------------------------------------------------

17cv7232

OPINION & ORDER

WILLIAM H. PAULEY III, United States District Judge:

        Plaintiffs Michael and Anne Donohue move to remand this action back to New York State Supreme Court, New York County. For the reasons that follow, Plaintiffs' motion is denied.

## BACKGROUND

        This is a product liability action arising from Michael Donohue's exposure to asbestos in connection with his work as a fireman and machinist in the United States Navy ("Navy") and later as a wiper and assistant marine engineer with the New York City Fire Department ("NYFD"). Donohue's complaint alleges that the Defendants in this action—manufacturers of asbestos-containing equipment used by the Navy and the NYFD—failed to warn Donohue of the dangers of asbestos.[1] During his time in the Navy, for example, Donohue alleges asbestos exposure in connection with repairing, maintaining, inspecting, and cleaning

---

[1] While the Defendants' joint brief opposing Donohue's motion to remand addresses colorable federal defenses to defective design claims, Donohue has made clear that this case "is not based on an alleged design-defect, but instead based on the defendants' failure to warn Mr. Donohue regarding the dangers of asbestos." (Donohue's Reply in Support of Motion to Remand, ECF No. 97, at 1 (emphasis original); see also Mot. at 9 (addressing only the "so-called 'government contractor' defense in a case asserting a strict liability claim for failure to warn of the dangers posed by use of its products." (emphasis added).) Accordingly, this Opinion and Order analyzes the propriety of remand based on whether the Defendants have asserted a colorable federal defense specifically with regard to a failure to warn claim.

equipment such as pumps, valves, boilers, and turbo-generators. At the NYFD, Donohue alleges that he repaired, maintained, inspected, and cleaned asbestos-containing equipment located in the engine rooms of NYFD fireboats.

On May 30, 2017, Donohue was diagnosed with malignant mesothelioma, a fatal cancer caused by exposure to asbestos. On August 15, 2017, Donohue and his wife, Anne, commenced this action in New York State Supreme Court, New York County. Due to the exigent nature of his situation, Donohue asked the state court to include his case in the April 2018 in extremis trial cluster on the New York County Asbestos Litigation docket.

With Donohue's health rapidly deteriorating, the parties deposed him over five days in August and September 2017. Moreover, on September 21, 2017, the parties took Donohue's videotaped de bene esse trial preservation testimony.

On September 22, 2017, Defendant CBS Corporation ("Westinghouse") removed the case to this Court pursuant to 28 U.S.C. § 1442(a)(1), which provides that a civil action originating in state court may be removed to a federal district court if such action is against "[t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1). Thereafter, Defendant Crane Co. ("Crane") joined in the removal. (ECF No. 8.) In availing themselves of removal under § 1442, Defendants invoke the "government contractor" defense—that is, as manufacturers of equipment designed in accordance with the Navy's specifications, they acted under the authority, direction, and control of a federal agency and/or officer.

DISCUSSION

Removal under § 1442(a)(1) requires three elements: the removing defendant (1) is a federal agency or officer, or acted under the direction of one; (2) has a colorable federal defense; and (3) can establish a causal connection between the conduct in question and the federal directive. New York v. Grasso, 350 F. Supp. 2d 498, 500 (S.D.N.Y. 2004). While the burden of establishing federal jurisdiction lies with the party seeking removal, "the Supreme Court has held that federal officer removal should not be constrained by a narrow, grudging interpretation." Allen v. CBS Corp., 2009 WL 4730747, at *2 (D. Conn. Dec. 1, 2009) (citing Jefferson Cnty. v. Acker, 527 U.S. 423, 431 (1991)).

I. Removal Under § 1442(a)(1)

A. Persons "Acting Under" a Federal Officer or Agency

Westinghouse and Crane are "persons" under the federal removal statute, which includes corporate entities. Isaacson v. Dow Chem. Co., 517 F.3d 129, 136 (2d Cir. 2008) (in analyzing § 1442, the "term 'person' includes corporate persons"). But because neither Defendant is a federal officer, each must also demonstrate that its actions—designing and manufacturing asbestos-laden equipment—were taken "under color of [federal] office." See Isaacson, 517 F.3d at 137. An entity "acts under a federal officer when it assists, or helps carry out, the duties or tasks of the federal superior." Isaacson, 517 F.3d at 137 (citing Watson v. Philip Morris Cos., 551 U.S. 142, 152 (2007)). For purposes of assessing removal, the Defendants need only show that "the acts for which they are being sued . . . occurred because of what they were asked to do by the Government." Isaacson, 517 F.3d at 137 (emphasis original).

Here, both Defendants assert, in their respective notices of removal, that they manufactured equipment for, and under the auspices of, the Navy. Westinghouse states that it

manufactured and designed the equipment "in accordance with precise, detailed, specifications promulgated by the Navy Sea Systems Command," which were "approved for use on military vessels." (Westinghouse Notice of Removal, ECF No. 1, ¶ 14.) Crane also claims that it contracted with the Navy to build equipment for use on Navy ships. (Crane Notice of Removal, ECF No. 8, ¶¶ 11–12.) Thus, each Defendant "received delegated authority to complete [its] contracts and were therefore helping carry out the duties of [its] federal superior." Allen, 2009 WL 4730747, at *2.

    B.  Colorable Federal Defense

The second element under § 1442(a)(1) requires the defendant to raise a colorable federal defense. Jefferson Cnty., 527 U.S. at 431. "Courts have imposed few limitations on what qualifies as a colorable federal defense. At its core, the defense prong requires that the defendant raise a claim that is defensive and based in federal law." Isaacson, 517 F.3d at 137 (internal quotation marks and citation omitted). More specifically, the defense must "aris[e] out of [the party's] official duties." Arizona v. Manypenny, 451 U.S. 232, 241 (1981). To be "colorable," the "defense need not be clearly sustainable, as the purpose of the statute is to secure that the validity of the defense will be tried in federal court." Isaacson, 517 F.3d at 137.

The government contractor defense in a failure to warn case requires the Defendants to show: (1) government control over the nature of the product warnings; (2) compliance with the Government's directions; and (3) communication to the Government of all product dangers known to it but not to the Government." Densberger v. United Techs. Corp., 297 F.3d 66, 75 (2d Cir. 2002). The Defendants may satisfy these requirements through facts alleged in their notice of removal and supporting affidavits.

4

Donohue contends that the Defendants' papers are "devoid of any documents or other evidence that could potentially establish a colorable 'government contractor' defense," and that the affidavits, in particular, are bereft of "a sufficient factual foundation to support [the] assertion that the Navy prevented [the defendants] from warning end-users of [their] products." (Pl. Memo. of Law in Support of Motion to Remand ("Mot."), ECF No. 94, at 14.)  Indeed, Donohue is correct to the extent that the affidavits submitted by Defendants in support of their removal notice do not specifically address the vessels on which Donohue worked or the asbestos-containing equipment that allegedly contributed to his injury.

But at this juncture, the inquiry whether Defendants have asserted a colorable defense does not require this Court to determine the merits.  While Donohue takes issue with the admissibility of the affidavits—claiming that they were submitted by individuals who lack "firsthand knowledge of the specifications relating to any specific piece of equipment on" Donohue's vessel (Mot. at 14)—Defendants "need not prove [their] defense to the level [they] would at trial." Clayton v. Air & Liquid Sys. Corp., 2013 WL 6532026, at *7 (W.D.N.Y. Dec. 12, 2013).  Rather, they "need only make a colorable showing of this defense to support removal of this case (and to resist its remand at this time)." Clayton, 2013 WL 6532026, at *7; see also Hagen v. Benjamin Foster Co., 739 F. Supp. 2d 770, 782 (E.D. Pa. 2010) ("The Court, therefore, can balance the interest in broadly construing removal under Section 1442(a)(1) against its statutory limits and any associated constitutional concerns without requiring defendants to make such a significant showing of the merits of their defense at this early stage.").  If, later on, it "becomes evident that the relevant facts developed in the litigation do not support jurisdiction, the Court will do what it would do in any removed case: dismiss and remand the action based on lack of subject matter jurisdiction." Hagen, 739 F. Supp. 2d at 782.

The point "of removal is to litigate the defense in federal court." Crosby v. A.O. Smith Water Prods. Co., 2014 WL 4059815, at *5 (S.D.N.Y. Aug. 15, 2014). Thus, "imposing an evidentiary burden to get into federal court is putting the cart before the horse." Crosby, 2014 WL 4059815, at *5. Here, the Defendants have established a colorable federal defense based on their supporting papers. The first two requirements—the Government's control over the nature of the product warnings and the Defendants' compliance with the Government's directions—are present. (See Westinghouse Notice of Removal, ¶¶ 13–14; Crane Notice of Removal, ¶¶ 13–14, Ex. 4, Affidavit of Rear Admiral David P. Sargent, Jr., ¶¶ 23–32, 59.) And the third requirement—that the Defendants warned the Navy of the risks that were possibly unknown to the Navy—is satisfied through the affidavit of Samuel A. Forman, who attested that the Navy possessed "state of the art" knowledge regarding the hazards of asbestos "equal to or superior to its equipment suppliers." (Crane Notice of Removal, ¶ 18 (citing Ex. 5, Affidavit of Samuel A. Forman, ¶¶ 21–23).); see also Machnik v. Buffalo Pumps Inc., 506 F. Supp. 2d 99, 104 (D. Conn. 2007) ("[Defendant] satisfies this element through the affidavit [of a qualified witness], which establishes that the Navy was well aware of the health hazards associated with the use of asbestos from the early 1920s through a review of available military documents and other relevant publications.").

    C. Causal Nexus

The final element under § 1442(a)(1) is whether there is a "causal nexus between the sale of [Westinghouse and Crane's] equipment to the Navy pursuant to its specifications and [Donohue's] alleged injuries." Clayton, 2013 WL 6532026, at *8. Put another way, a causal nexus exists when "the very act that forms the basis of plaintiffs' claims—[Defendants'] failure

to warn about asbestos hazards—is an act that [Defendants] contend[] [they] performed under the direction of the Navy." Leite v. Crane Co., 749 F.2d 1117, 1124 (9th Cir. 2014).

Both Westinghouse and Crane's affidavits provide enough facts—at least for purposes of removal—for this Court to credit their theory of the case and marshal it forward to a stage in which that theory will be put to the test under a much more rigid standard of review. Westinghouse attests that "[i]n designing, manufacturing and supplying the turbines at issue in this case to the United States Navy, [it] acted under the detailed and ongoing direction and control of one or more federal officers." (Westinghouse Notice of Removal, ¶ 14.) "[A]n Inspector of Naval Machinery [ ], who was resident at Westinghouse's manufacturing facility, personally oversaw the manufacturing process and enforced compliance with the Navy's design specifications." (Westinghouse Notice of Removal, ¶ 14.) Such oversight, according to Westinghouse, dictated the types of labels that were emblazoned on its products. (See Westinghouse Notice of Removal, ¶¶ 12–13.)

Crane also furnishes a basis to establish the causal nexus between its purported failure to warn and its compliance with the Navy's directions. Crane, relying heavily on the affidavit of retired Naval Rear Admiral David P. Sargent, contends that the "Navy's specifications governed not only the design and construction of Crane Co. products, but also the form and content of any labeling, product literature, or warnings [ ] with the products. The Navy reviewed the proposed product literature and labeling that accompanied products like those supplied by Crane and Co. and, at its discretion, edited the wording of instructional material and warnings, approving certain warning language and disapproving other language." (Crane Notice of Removal, ¶ 13.)

7

The Plaintiffs appear to argue that the Defendants are required to offer more evidence to establish a causal nexus—that is, the Defendants' removal applications "fail[ed] to establish that any federal officer or agent prohibited [them] from warning potential end-product users about the dangers associated" with the use of their products. (Mot. at 16.) But this is "more than [the Defendants] are required to do." Nesbiet v. Gen. Elec. Co., 399 F. Supp. 2d 205, 212 (S.D.N.Y. 2005). "Just as requiring a clearly sustainable defense rather than a colorable defense would defeat the purpose of the removal statute . . . so would demanding an airtight case on the merits . . . in order to show the required causal connection." Jefferson Cnty., 527 U.S. at 432. While both Westinghouse and Crane's representations regarding the scope of the Navy's control, supervision, and direction over what was (and was not) labeled on their products could be overstated, it is not appropriate to make such a detailed inquiry at this stage of the litigation. Rather, in assessing the three elements to removal under § 1442(a), this Court simply concludes that the question of "whether the challenged act was outside the scope of [the Defendants'] official duties, or whether it was specifically directed by the federal Government, is one for the federal—not state—courts to answer." Isaacson, 517 F.3d at 138.

II. Removal of All Defendants

While Westinghouse and Crane are the only defendants that filed their notices of removal, there are nearly two dozen other defendants involved in this action. As a general matter, "the consent of all defendants in a multiparty case is a precondition to removal." Green v. Nat's Assoc. of Prof'l and Executives, 1992 WL 212348, at *2 (S.D.N.Y. Aug. 21, 1992); Codapro Corp. v. Wilson, 997 F. Supp. 322, 325 (E.D.N.Y. 1998) ("[I]t is . . . well settled in this jurisdiction that all defendants must join a removal petition or else the petition is defective and the case must be remanded.").

8

Removal under § 1442, however, is "an exception to the general rule that all defendants must join in a notice of removal." <u>Torres v. CBS News</u>, 854 F. Supp. 245, 246 n.2 (S.D.N.Y. May 27, 1994). When a federal officer removes a case under § 1442, "the entire case against all defendants, federal or non-federal, is removed to federal court regardless of the wishes of his [sic] co-defendants." <u>Arango v. Guzman Travel Advisors Corp.</u>, 621 F.2d 1371, 1376 (5th Cir. 1980); <u>see also</u> <u>Dist. of Columbia v. Merit Sys. Prot. Bd.</u>, 762 F.2d 129, 132 (D.C. Cir. 1985).

Accordingly, because Westinghouse and Crane have sufficiently satisfied the requirements under § 1442(a), the remaining defendants are also removed to this Court.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to remand is denied. In view of the Plaintiffs' representations that, absent removal, this case would have been accepted into the New York state court's <u>in extremis</u> trial cluster of asbestos cases, this Court is prepared to expedite this action to trial. Accordingly, the parties are directed to provide this Court with a status update on any remaining pre-trial discovery by December 1, 2017. A status conference shall be held on December 5, 2017 at 11:30 a.m.

The Clerk of Court is directed to terminate the motion pending at ECF No. 55.

Dated: November 27, 2017
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

9